Thank you, Judge Gould. May it please the Court, my name is Paul Burdette of Getz Baldwin and Getz Law Firm for the appellants Joe Mulroy and Yorlam Ranch. I'm gonna try to reserve three minutes for rebuttal but I will watch my time. We'll try to watch and remind you but it's up to you ultimately. Thank you, Your Honor, there is quote no evidence that Duane Kime, the builder in this case, intended the property damage that resulted from the beetle infestation. This case involves a infestation of powder post beetles to a log home and these beetles are particularly harmful because they have the ability to continually reinfest the logs over and over and they'll continue to cause aesthetic and structural property damage until the home is compromised. In Northland's brief in support of plaintiff's motion for summary judgment, that's document 33 in the district court, Northland admitted that there was no evidence that Kime intended these beetles to infest this home and that makes sense. He actually didn't know about the beetles until years later. Because Northland's policy, sorry, the scope of coverage under Northland's policy is defined by the term an occurrence and an occurrence is defined in the policy as... Can I pose a question for you? Of course. Just to try to see if I can encourage you to spend some time on it, the issue that's bothering me. I think that the appellant's got a pretty good argument here that there's an occurrence but the exclude coverage and I know the district court didn't address that and I thought your brief said we shouldn't look at it because the district court didn't rule on it but our law is really well established that we could affirm for any ground supported in the record. So we could affirm if there's a clear exclusion shown in the record and of course that wouldn't help your case but that's why I want you to address it more than it was addressed in the in the briefing. Yes, Your Honor. I agree with you that if this court chooses it can reach and decide the case on the exclusions. I believe that is clear. Our argument is that this court should exercise this discretion not to because there is no discussion from the district court. The district court didn't point to any exclusions that it thought applied. The court simply said in a footnote that one of these exclusions likely applies and so there isn't any consideration by the court for this court to review. I would direct the court's attention to a couple of cases that we cited in the brief. One is the Latrim case. It's a Federal Ninth Circuit case called Golden Nugget and the Golden Nugget case stands for the proposition that is within this court's power to consider issues that were not subject to a district court's ruling but that were briefed below but that the Ninth Circuit ordinarily will not do so unless it believes for some reason that it is judicially efficient for the court to consider those issues. I would assert that in this case there are numerous exclusions and enough sort of that it would be judicially inefficient to have this court reach all those issues that were not decided by the district court and it would be much better for the case to be simply remanded on the grounds that there was no, sorry, there wasn't an occurrence here because the conduct was accidental and remand for consideration of those remaining issues and let the district court sort it out below. Thank you. I do want to take the time to talk about some of the exclusions. That's, well, that's a sufficient answer to my question. I don't want to get you off your planned argument on occurrence because it could be you have two others who see that one differently than I do. Understood. I'm happy to take it out of order. I want to make sure that I reach the exclusions because I recognize that some of them are a little bit tricky and I want to just do this out of order and talk about the exclusions and then if I have time I'll come back and address the occurrence issues. So we raised our arguments about every exclusion that was raised below. Northland has not appealed in its response brief all of those exclusions. It only briefed four of them and so I'm just going to talk about the four that Northland addressed. Starting with exclusion J5. Exclusion J5 excludes coverage for property damage only to that particular part of real property on which the contractor is working directly or indirectly on your behalf or performing operations that arises out of those operations. It's a little bit confusingly worded but we cited the Newman versus Scottsdale case for the proposition that that phrase arises out of is ambiguous and must be construed in favor of coverage if at all possible. We maintain that the exclusion J5 doesn't apply because it's limited to that particular part of the real property on which the contractor was working. Here the beetles were in the logs before the home was ever built so it wasn't any work that the contractor, Duane Kime, actually did to the home when it caused the property damage. We also maintain that J5 doesn't apply for the simple reason that it only applies to damages that occur while the operations are being performed. Since the home is completed and sold at this point exclusion J5 no longer applies simply based on the timing. So on the first exclusion you talked about, would it be work of the contractor if the contractor made an admission to treat the logs with some kind of insecticide that would get rid of the beetles? Yes, your honor. Although those are not the facts that we have here. Here the the contractor did not perform any work in treating the logs and he, I believe, stripped and peeled and notched the logs and prepared them for the log home but he did not end up treating them and if you're referring to the last exclusion, it's exclusion L, that's the your work exclusion, I don't believe that that applies to work not performed. So yes, it would apply if he actually affirmatively did something, did some work. I think what I was wondering is whether an omission to do work is work. It doesn't, your honor. I don't believe that it does because the way that the policy is worded is it says property damage, sorry, exclusion L bars coverage for property damage to your work arising out of it and again that's that ambiguous arising out of it language or any part of it included in the products completed operations hazard. Okay, thank you. Your work is defined as worker operations performed by you or on your behalf and, and that's important, it's a conjunctive test so the your work definition is both work performed by the contractor and materials, parts, or equipment furnished in connection with such work. Northland would have the court just focus on the word materials and say that well the damage was to the logs and so this exclusion applies but when you read the the conjunctive definition of your work and the actual exclusion itself it's clear that it only bars property damage to work that the contractor actually performed and there's no language in there that would suggest that it would apply to work that wasn't performed or some omission that happened during the course of the building project. Thank you. So in your view it wouldn't apply to the installation of the, you know, to putting the logs in that were infested? No, because it was nothing that the contractor did, it was something that Dwayne Kime did. Well he acquired the logs. He acquired the logs. He didn't use the logs in his work. He did purchase the logs but that was not the cause of the property damage here. The cause of the property damage was the beetle infestation and because he didn't put the beetles in that caused the damage it doesn't make sense to interpret this exclusion as applying. He didn't take any action that caused the property damage. I think that's underscored by the fact that Dwayne Kime had been building log homes for his entire career. I think I cited in this brief that it was 16 years, it's 18 now, and he had never treated the logs and in fact until this case happened had never heard of anyone treating the logs. And so for each and every home that he built up until this one he had not treated the logs and he had purchased the logs and done the same actions without any property damage occurring. And so I think that highlights the fact that it wasn't anything that he did specifically to this home. It wasn't his work that caused the property damage that gave rise to an occurrence that bring us here today. So in exclusion L it has the phrase products completed operations hazard which has its own definition. That's correct. So how does that read into this exclusion? The products completed operations hazard just has to do with the timing of when an exclusion applies. Because exclusion L is included in the products completed operations hazard, that means that it applies once the project has been completed. So exclusion L would apply if its language applied to the fact, whereas exclusion J6 would not. So exclusion J6 specifically says that it does not apply to property damage included in the products completed operations hazard. So as a result exclusion J6 would only apply to work that has not been, quote, completed or abandoned. And since this home was the damage wasn't discovered for a few years, exclusion J6 would not apply. But if its terms did, exclusion L would, based on the timing. Do you have any cases that support your reading of exclusion L? We cited the Newman versus Scottsdale case for the phrase that arises out of being ambiguous. But I don't have any specific case that discusses whether or not the exclusion could cover an omission. I looked. I don't believe there's anything cited in our brief. It may be an issue of first impression as far as I'm aware. So in your view, because we're dealing, in your view, we're dealing with an omission. Right. And therefore the arising out of doesn't relate to his work, his actual. That's correct. The construction that he did. And that was the focus of the district court as well, is that the court focused on the failure to treat the logs. And the district court read some intentionality into that failure to treat the logs. We don't think that the record supports the district court's finding that he somehow made an intentional business decision not to treat the logs. But that is what that issue here is. The fact that Duane Kime didn't treat the logs and should have, which was the basis for the negligence case before the district court. Before the district court, the question was whether or not he had violated the standard of care in the industry by not treating the logs. Counsel, by the way, if you want to reserve rebuttal time, you don't have much left also. I was going to say that if you . . . you know, we can give you a couple of extra minutes, but if you want to address that, I think your learned adversary will argue the district court didn't make a mistake on that. I appreciate that, Your Honor. I will reserve the rest of my time if there are no further questions. Thank you. Okay. Now we will hear from the appellee, Mr. Mickelson. Thank you, Your Honor. May it please the Court, I am Marshall Mickelson from Craig Black Carlson and Mickelson in Butte, Montana. I will address first as we have the exclusions in this case and then go back and talk about the occurrence. What the argument here is, and with respect to the previous exclusions, J-5, the real property and the work, those were really raised because the bugs were eating into the logs at the time that they were installed in case there was an damage occurred. It just wasn't found somewhere else. Well, the appellants here have not made that argument and they have conceded that what we are talking about is the your work exclusion because the project was completed and so the damages occurred after the products were completed. And what they have argued is that somehow this conjunctive with worker operations performed by you and makes their case for them when in fact what we have is we have a contractor who was doing work and operations. He was building a log home and he bought these logs and he notched them, he stripped them, he prepared them to build into a wall and the materials and parts, these logs, were infected with these beetles. It is his work and his materials and his product. Now it is not the product in the product's exclusion, although it could be, but here what we are talking about is his work, he got these logs, he incorporated them into his building and those materials were defective. Now whether he knew those materials were defective really isn't the point. Whether it was an admission of his work, there is no, you can't, the exclusion itself is clear that it is your work arising out of it or any part of it included in the product's completed operations. And we have to keep in mind here that this was an admitted judgment or an admitted liability based upon the contract that was filed in the underlying State District Court. And in that allegation, the allegation was the standard of care was to treat these logs and he failed in that standard of care. That is his work. He made whether it was the right decision, an intentional decision, we will talk about that, or a negligent decision, there was a decision or an omission there that he failed to do his work. It is no different than if a contractor was supposed to put a particular bolt into the structural steel and he omitted that bolt. Is that not his work? That is his work. And here the contractor didn't treat these logs. That is his work. And the clear language of the exclusion is that property damage to your work arising out of it or any part of it and your work means operations performed and materials, parts and equipment. Counsel, how do you answer the appellant's argument that although we have the procedure in our discretion to send that back to the District Court? Thank you, Your Honor. As counsel noted, the case is talking about the efficient use of the court's time. And here, these exclusions were all argued to the District Court. And the District Court, while it didn't give us several pages of his thought process, in two footnotes in the two different opinions, he said even if there was an occurrence, these exclusions, the business risk exclusions are going to exclude this work here. And so it has been fully, the record has been fully developed before this court. And the District Court did look at it and made a decision but didn't expound on why he decided that. And the Constanoga case as well as Gulf USA cited in our brief says that this court may address principle arguments raised below but not explicitly addressed. And Judge Christensen didn't explicitly address those but he did in that footnote twice and said that these exclusions would apply. And of course, Gulf USA says you may affirm summary judgment on why it's important that it was fully briefed under in the District Court so that you have that materials and it's a de novo review and you can take a look at those exclusions and you can make a determination here because to send it back and to have Judge Christensen say, yeah, I said it was excluded under your work exclusion and then we're back up here again for you to decide that same issue. So we think the efficient way in this court, it's clear that the Ninth Circuit has said that this court has the ability to do that. Which of the exclusions, counsel, are you relying on principally under your work analysis? Is that J5? Principally it's exclusion L, Judge Fischer, that it's the your work exclusion. And should there be any question about whether or not this damage occurred while this log home was being constructed, then you would take a look at exclusion J6 and exclusion J5, which involves real property, if you want to call this house real property after it's completed. But it's clear that the case... But J5 applies if the work is ongoing. But the damage here occurred after completion. That's why I asked. So you still think J5 is relevant? It's only relevant to the extent that there would have been an argument by Mr. Mulroy that this damage occurred while the house was being built. And it really, they have not taken that position. I think everybody has agreed that the house was completed and the damage occurred after the house is completed. So I think exclusion L is our primary exclusion that we would want the court to review. Okay. So L bars coverage to the extent it was damage caused by his work. But the damage, as I understand it, comes in the remediation with the fixtures and appliances and cabinets and drywall and sheetrock having to be removed. Those are not Kimes' work, are they? No, Your Honor, they are not. However, you have to look at what the underlying judgment was for. The underlying judgment was for stripping the logs and repairing the logs. Now, there was some property that's in the way that they could not get to, to the logs, unless they remove that property. But that property was not damaged. What was damaged and what was clear from the underlying judgment is only the logs that he constructed. And there's about $208,000, which does include moving that stuff out of the way. But it's the repair, only repair to the log. And because it's only the repairs to the log, that's the property damage that we're talking about here. And that's the property that was his work. So what I'd also like to address a little bit is the idea of the post-summary judgment decision deposition of Mr. Kime and his testimony with respect to, well, I don't do it that way. That's not a standard of care that I'm aware of. I think it's important for this Court to understand that there was a confession of liability. And that confession of liability didn't have any factual findings. But it was a confession of liability of the complaint that was filed against Mr. Kime. And that complaint alleged that the standard of care was to treat logs for insects and that he did not do so. This is relevant also for our argument on occurrence. Our argument here is that there are stopped from coming in and talking about a deposition that was occurred really for other parts of the case that were still left after the district court granted the summary judgment. That when Mr. Kime, and if you look at his page 85 of his deposition in the record, it's really not that clear what he's saying with respect to whether or not he didn't do this as a part of a business, as a choice, but certainly he said, I've never done it and never seen it done. But that's not what the confession was. And just as an insurance company is stopped from arguing or relitigating facts if they didn't defend a case when they're trying to get coverage, the insured in this case can't come in and relitigate facts that were determined in that underlying judgment. And that's important with respect to the occurrence. Because what those facts are is there was a duty or the standard of care and I didn't do the standard of care even though I knew about it. That's the allegation. And so what we're looking at with respect to the Fisher decision Did he do that with the intent of causing the damage? That's not what I understand him to be saying. I don't believe that it's the intent. He certainly didn't anticipate or contemplate that at the end of all this, there's going to be a log home that's infested with beetles. That's not what he intended. Absolutely. The intent comes in the choice to not treat. The intent comes in with respect and so when counsel argues that we stated he didn't intend these beetles to destroy this house, that's true. The intent is the choice to not treat the logs. That's the intentional act. It's faulty workmanship. It's a decision, I'm not going to do this. And so what Fisher then says is what are the damages, even though you make an intentional choice, is the consequences of that intentional choice, is it not foreseeable? And here, if the standard of care is to treat the logs to avoid insects doing exactly what they did in this case, and you chose not to do that, then what that results is a chance that your logs are going to be infected with insects. And so it's what the Montana Supreme Court has done is set up a test based on the expectation of damages and the objective test of the expected damages. Now they want to argue throughout their brief that it's an intent. It was the intentional type damages such as hitting someone. Those are things that you break their jaw when you hit someone, that's going to happen. But here it is the expected damages and what is a reasonable expectation of these damages and if you don't treat the logs. Wouldn't that just be a tribal issue of fact if it came down to that? I do not think it is, Your Honor. If it's a matter of law, it wasn't objectively intended. I think that's based upon when you read the complaint that was filed in the underlying case and the confession of judgment, there aren't any factual issues out of that. Now they have tried to say that, well, it was negligence, some sort of negligent failure to do that, but they're trying to make that argument with the deposition that was taken after that decision was determined. And I don't think that that is a fact issue because when you read that complaint and when they say you violated the standard of care, you knew what the standard of care was and you didn't tell us what the standard of care and you misrepresented that you did it, then that is sufficient for the district court in this case to determine that that was an intentional act and then the next step is what is the consequences of that intentional act. And just like in the Blair decision where a guy dug a gravel pit and the court said, well, if you dig a gravel pit, your neighbors are going to be upset, if you don't treat logs for insects, then when the logs get insects, that is an expected result. So we do think that the occurrence here, that there is no occurrence and occurrence and ambiguous because the Montana Supreme Court in Blair and Fisher and the other cases have told us exactly how we should interpret that phrase. Thank you, Your Honor. That's all I have. Thank you very much. Mr. Burden, I guess you have some rebuttal time, right? Thank you, Your Honor. I think you saved a bit of time. I'd like to start off by addressing the point that Judge Fisher raised about the damages here and I just want to point out that the damages clearly include costs of remediation such as removing the fixtures, et cetera, and that Northland can't remove the remediation from the damages claim here. I think that's clear from the findings of the fact and conclusions of law. What are the amount of those damages? I don't recall the exact number. I think it was around $230,000, but that's in the findings of fact, conclusions of law and the judgment of the district court at the ER. Just for the total damages or the part you say was not his work? There was also damages for the loss in value of the project that they determined could not be fixed through the remediation. But the removal of the fixtures and so on, is that a separate component of the $230,000 or it's part of it? I don't believe it was. My understanding is that that was what it would cost to take the house apart, take the fixtures apart, and treat the logs and put it back together and that removing the fixtures was a part of the treatment process. So it's all part of the same damages. Judge Payaz, I'd like to briefly address the issue that you raised about whether or not there's a triable issue of fact. We also don't believe that there's a triable issue of fact, but from my perspective, that's because Northland has conceded that there is no evidence in the record that Kime actually intended the harm here. And because the Fisher case set up a two-part test, and that under that second part of the test, if the damages were not expected or intended from the standpoint of the insured, there's no coverage, they've essentially already conceded that factual issue. So on remand, there would be nothing to try. I see that I'm out of time. Thank you. I have a question. It's for Counsel Burdette. I might have misstated Burton earlier. I have trouble reading my page here, but it's Burdette and also for Counsel Mickelson. For both of you, my question is, have the two of you mediated in the district court or mediated up in our court through our facilities? And is there any chance, of course, I don't know if my colleagues would have any interest in this, but if both of you thought you could use our mediation facility, of course, we can do that. Yes, Your Honor. We did mediate the case and tried to settle it before this argument, and we were not able to settle the case. Great. Okay. Thanks. Then, we appreciate your arguments, and I particularly appreciate that both of you have proven that I was right, that Montana lawyers give us great arguments, so thank you, and the Northland case shall be submitted, and the court will adjourn for the day.
judges: Fisher, Gould, Paez